**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**PEGGY FARRICIELLI,**

    **Plaintiff,**

v.

**COMCAST CABLE COMMUNICATIONS, LLC,**

    **Defendant.**

_____/

CASE NO.: _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Peggy Farricielli ("Ms. Farricielli"), by and through their undersigned counsel, hereby files this Complaint against Defendant, Comcast Cable Communications, LLC ("Comcast" or "Defendant"), and states as follows:

**INTRODUCTION**

1. This is an action for damages brought by an individual consumer based on Defendant's violations of the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55 *et seq.* ("FCCPA") and the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

**PARTIES**

2. Ms. Farricielli is a natural person who has resided in Cape Coral, Florida throughout the time period relevant to this action.

- 1 -

3. Comcast is a Pennsylvania corporation that maintained its principal place of business in Philadelphia, Pennsylvania during the time period relevant to this action, and has a registered agent located in the State of Florida.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the TCPA.

5. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Ms. Farricielli's claims under the FCCPA because those claims share a common nucleus of operative facts with Plaintiff's claims under the TCPA. S*ee LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

7. Around March or April 2017, Comcast and/or Third Party companies acting within the scope of their employment as agents for Comcast ("Comcast Agents") began calling Ms. Farricielli on her cellular phone ending in -2623 using an Automatic Telephone Dialing System ("ATDS").

8. Comcast and/or Comcast Agents were calling Ms. Farricielli using an ATDS without Ms. Farricielli's prior express consent.

9. Shortly after the calls began, Ms. Farricielli communicated her desire that Comcast and/or Comcast Agents cease calling her.

10. Comcast and/or Comcast Agents were calling Ms. Farricielli after Ms. Farricielli clearly revoked any consent Comcast and/or Comcast Agents would have relied on to place calls to her cellular telephone.

11. Comcast and/or Comcast Agents called Ms. Farricielli on her cellular phone from various numbers including, but not limited to 800-266-2278 using an ATDS.

12. Comcast and/or Comcast Agents called Ms. Farricielli on her cellular phone, from 800-266-2278, multiple times per day between May 15th, 2017 and May 20th, 2017 using an ATDS.

13. During that time period, Ms. Farricielli answered Comcast's and/or Comcast Agents's calls on more than one occasion, and when she was able to reach a live representative informed Comcast and/or Comcast Agents that the calls were "stressing her out".

14. On multiple occasions during that time period when Ms. Farricielli answered Comcast's and/or Comcast Agents's telephone calls, she would hear dead air.

15. On multiple occasions after that time period when Ms. Farricielli answered Comcast's and/or Comcast Agents's telephone calls, the calls would immediately terminate.

16. On multiple occasions, Ms. Farricielli has called 800-266-2278 and has spoken with Comcast and/or Comcast Agents.

17. During each of these calls, Ms. Farricielli demanded Comcast cease calling her.

18. On multiple occasions, Ms. Farricielli informed Comcast and/or Comcast Agents that her mother was terminally ill and, literally, pleaded with Comcast and/or Comcast Agents to cease calling her.

19. Every time Comcast and/or Comcast Agents called Ms. Farricielli on her cellular phone, Ms. Farricielli suffered severe anxiety believing that it might be the hospital or a doctor calling Ms. Farricielli informing her that her mother had passed away.

20. On every occasion that Ms. Farricielli spoke with Comcast and/or Comcast Agents, they apologized for the calls and indicated that they would put a note in her file to get the robocalls to stop.

21. Despite this, Comcast and/or Comcast Agents continued to call Ms. Farricielli over 150 times using an ATDS.

22. Often, when Ms. Farricielli would answer the calls from Comcast and/or Comcast Agents, she would hear an automated voice tell her to "please hold" before the call was connected to a representative from Comcast and/or Comcast Agents.

23. Often, when Ms. Farricielli would answer the calls from Comcast and/or Comcast Agents, she would hear a short pause before being able to speak to a live representative from Comcast and/or Comcast Agents.

24. Often, when Ms. Farricielli answered calls from Comcast and/or Comcast Agents, she would hear a clicking sound before being able to speak to a live representative from Comcast and/or Comcast Agents.

25. On multiple occasions, Counsel for Plaintiff has attempted to reach Comcast and/or Comcast Agents, using multiple telephone numbers, to try and identify a facsimile number for Counsel for Plaintiff to fax a "cease and desist" letter to Comcast.

26. During many of these communications, Comcast and/or Comcast Agents stated they did not know a proper fax number for Comcast.

27. During one of these communications, Comcast and/or Comcast Agents hung up on Counsel for Plaintiff.

28. Counsel for Plaintiff finally obtained facsimile numbers for Comcast and/or Comcast Agents and faxed two letters demanding Comcast and/or Comcast Agents cease calling Ms. Farricielli.

29. Despite this, Comcast and/or Comcast Agents continue to call Ms. Farricielli as of the date this Complaint is being filed.

30. On information and belief, Comcast does not maintain an internal "Do Not Call" registry that is available to its Agents.

31. On information and belief, when Comcast and/or Comcast Agents receive a request for Comcast and/or Comcast Agents to cease calling, they do not properly notate that specific file internally.

32. On information and belief, when Comcast and/or Comcast Agents receive a request for Comcast and/or Comcast Agents to cease calling, they simply put that particular number on the National Do Not Call Registry ("NDNCR") using the NDNCR's website.

33. On information and belief, it is the business practice of Comcast and/or Comcast Agents to do this without the consumer's consent.

34. The NDNCR is managed by the Federal Trade Commission.

35. If a consumer's telephone number is placed on the NDNCR, that consumer is deprived of receiving any telemarking calls, not just from Comcast and/or Comcast Agents.

36. It is unconscionable for Comcast and/or Comcast Agents to be putting consumers telephone numbers on the NDNCR without their will.

37. It is unconscionable for Comcast and/or Comcast Agents to be putting consumers telephone numbers on the NDNCR versus maintaining an internal do not call list available to Comcast and Comcast Agents.

38. Comcast's and/or Comcast Agents's collection efforts, including but not limited to its telephone calls, caused Ms. Farricielli emotional distress in the form of frustration, annoyance, aggravation, and anxiety, and deep concern for her mother's wellfare.

39. Comcast's and/or Comcast Agents's collection efforts also intruded upon Ms. Farricielli's privacy.

40. In addition, each time Comcast and/or Comcast Agents placed a telephone call to Ms. Farricielli, Comcast and/or Comcast Agents occupied Ms. Farricielli's telephone number such that Ms. Farricielli was unable to receive other phone calls at that telephone number while Comcast and/or Comcast Agents were calling her.

41. Comcast's and/or Comcast Agents's telephone calls also forced Ms. Farricielli to lose time by having to tend to Comcast's and/or Comcast Agents's unwanted calls.

## APPLICABLE LAW

42. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at

> night; they force the sick and elderly out of bed; they hound us
> until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

43. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

44. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

45. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *Smith v. MarkOne Fin., LLC*, 2015 WL 419005, *2-3 (M.D. Fla. Feb. 2, 2015); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

46. Comcast and/or Comcast Agents used a telephone dialing system with predictive dialer functionality to place calls to Ms. Farricielli on her cellular telephone.

47. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

48. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72-73 (2015).

49. Ms. Farricielli was the "called party" in each telephone call Comcast and/or Comcast Agents placed to Ms. Farricielli's cellular telephone.

50. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

### WILLFUL VIOLATIONS OF THE TCPA

51. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

52. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

53. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

54. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

## COUNT ONE

### Violation of the Telephone Consumer Protection Act

55. Ms. Farricielli re-alleges and incorporates by reference Paragraphs 2 through 54 above as if fully set forth herein.

56. Comcast violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Ms. Farricielli on her cellular telephone without Ms. Farricielli's prior express consent or after such consent had been revoked.

57. Comcast Agents violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Ms. Farricielli on her cellular telephone without Ms. Farricielli's prior express consent or after such consent had been revoked.

58. In addition, because Comcast and/or Comcast Agents (a) voluntarily placed telephone calls to Ms. Farricielli's cellular telephone number in violation of the TCPA, and (b) failed to place intermittent live verification calls to ensure that Comcast and/or Comcast Agents had Ms. Farricielli's express consent to be called using an ATDS, Comcast's and/or Comcast Agents's violations were willfully and knowingly made.

59. Comcast Agents were acting as the agent of Comcast when it placed calls using an ATDS to Ms. Farricielli's cellular phone.

60. Comcast is vicariously liable for the TCPA violations committed by Comcast Agents. *See Campbell-Eqald Co. v. Gomez,* __ U.S. __, 136 S. Ct. 663, 674, 193 L Ed. 2d 571, 584 (2016).

## COUNT TWO

### Violations of the Florida Consumer Collection Practices Act

61. Plaintiff re-alleges and incorporates by reference Paragraphs 2 through 41 above as if fully set forth herein.

62. Defendant is a "creditor" as that term is defined in the FCCPA, Fla. Stat. §559.55(5).

63. At all times relevant to this action, Defendant is subject to and must abide by Florida law, including the FCCPA, Fla. Stat. § 559.72.

64. Plaintiff is a natural person obligated or allegedly obligated to pay a debt to Defendant, and is therefore a "consumer" or "debtor" as defined by the FCCPA §559.55(8), and is a person whom the act was intended to protect.

65. Defendant attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(6).

66. Defendant willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or engaging in other conduct which can reasonably be expected to abuse or harass Plaintiff.

## JURY DEMAND

67. Ms. Farricielli demands a trial by jury.

## PRAYER FOR RELIEF

68. Ms. Farricielli prays for the following relief:

   a. An order enjoining Comcast from placing further telephone calls to Ms. Farricielli's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

   b. Judgment against Comcast for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Comcast and/or Comcast Agents, made in violation of the TCPA.

   c. Judgment against Comcast for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

   d. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date:   June 27, 2017           By:   /s/ Sharina T. Romano
                                      Sharina T. Romano, Esq.
                                      Florida Bar No.: 65501

                                      HYSLIP & TAYLOR, LLC, LPA
                                      1100 W. Cermak Road, Suite B410
                                      Chicago, Illinois 60608
                                      (P) 904-853-3050
                                      (F) 312-361-3509
                                      (E) sharina@fairdebt411.com

                                      *Counsel for Plaintiff*